# SEYFARTH SHAW LLP
### ATTORNEYS

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
212-218-5629

Writer's e-mail
rwhitman@seyfarth.com

Writer's direct fax
917-344-1258

**RECEIVED JUL 24 2013 CHAMBERS OF JAMES L. COTT U.S.M.J.**

July 24, 2013

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/13**

*BY FAX -- 212-805-7990*

The Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re:   **Martinez, *et al.* v. Hilton Hotels Corporation, *et al.*,
      No. 10 CV 7688 (JLC)**

Dear Judge Cott:

This firm is counsel to defendants Sunstone Hotel Properties, Inc. and Interstate Hotels & Resorts, Inc. (the "Defendants") in the above-referenced case. We write jointly with Plaintiffs' counsel in furtherance of the July 18, 2013 telephone conference with Your Honor.

The parties have now finalized their written Agreement, a copy of which is attached hereto. As part of that Agreement, the parties have agreed to request that the Court review the Agreement *in camera*, approve its terms, maintain the Agreement under seal, and "so order" their Stipulation of Dismissal With Prejudice. The reasons for this request are as follows.

### A.     The Court Should Approve the Settlement Agreement

This case involves claims under the Fair Labor Standards Act. There is authority for the proposition that court approval is required for an FLSA release of claims to be legally enforceable. However, as Your Honor noted during the July 18 call, some recent decisions have called this line of cases into doubt. *See, e.g., Picerni v. Bilingual Seit & Preschool, Inc.*, 2013 WL 646649, at *9 (E.D.N.Y. Feb. 22, 2013) ("Ratcheting up the legal process to achieve some Platonic form of the ideal of judicial vindication did not seem necessary to accomplish any purpose under the FLSA."); *Martin v. Spring Break '83 Productions, LLC*, 2012 WL 3011004, at *6 (5th Cir. July 24, 2012) (judicial review of private settlements of FLSA claims not required where there is a bona fide dispute regarding number of hours worked). Nonetheless, given the uncertainty in this area and in an abundance of caution, the parties seek the Court's approval of their Agreement.



Honorable James L. Cott
July 24, 2013
Page 2

### 1. The Agreement is Fair and Equitable

The terms of the Agreement are fair to the Plaintiffs, and they have determined it is in their best interests to accept Defendants' settlement offer. Defendants will pay Plaintiffs a total sum of $225,000.00, for an average of $45,000.00 per Plaintiff. The amount of money each Plaintiff is set to receive is proportionately based on her tenure working for Defendants during the time period covered by the Amended Complaint. Payments will be made within 15 business days of Your Honor's approval of the Agreement. In exchange for the settlement payments they are set to receive, Plaintiffs have agreed, *inter alia*, to release Defendants from any and all liability, as set forth in paragraph 3 of the Agreement.

The outcome of further litigation is uncertain. Defendants deny liability as to all of Plaintiffs' claims, and there are a number of significant disputes on which the parties strenuously disagree, including Plaintiffs' classification as exempt from overtime and the proper method to calculate Plaintiffs' damages in the event they are found to have been misclassified.

This matter has been vigorously litigated, as reflected in Your Honor's summary judgment decision. More than ten depositions were conducted, including all five Plaintiffs. A great deal of thought and effort went into settlement negotiations on both sides. After several unsuccessful settlement conferences before Magistrate Judge Debra Freeman, the parties engaged former Magistrate Judge John Hughes of JAMS as a mediator. The parties spent an entire day with Judge Hughes, and with his assistance were able to reach a tentative agreement that has now been memorialized in the attached Agreement.

Plaintiffs are qualified to understand the nature of their claims, the risks of litigation, and the settlement, including the releases and payment of attorneys' fees. All five Plaintiffs, who no longer work for Defendants, have reviewed the terms of the Agreement and have agreed to the terms set forth therein.

### 2. The Fees and Expenses Paid to Plaintiffs' Counsel Are Reasonable

Defendants will also pay Plaintiffs' attorneys fees in the amount of $225,000 and expenses in the amount of $15,000. These amounts are fully supported by time records and work out to less than $275 per hour. Expenses included depositions, electronic legal research, and court costs.

### B. The Court Should Review the Settlement Agreement *In Camera* and Maintain it Under Seal

Neither the FLSA nor the applicable regulations requires that the Agreement itself be placed on the public docket or that its terms be disclosed in a public filing. The purpose of ensuring fair and equitable resolution of FLSA claims can be fulfilled without public disclosure. All of the remaining parties to this action have been represented by counsel throughout these proceedings, and all believe the settlement is fair and reasonable, adequately vindicates the plaintiffs' rights under the FLSA, and serves the parties' mutual interest in avoiding the cost, distraction and risk of further litigation. Further, because this case was not brought as a putative class or collective action, there





Honorable James L. Cott
July 24, 2013
Page 3

are no "absent class members" whose rights might be affected by the parties' Agreement or who would require notice of the settlement. The Agreement does not provide for this Court's retention of jurisdiction to resolve any disputes that may arise thereunder.

Numerous federal courts, including within this Circuit and District, have recognized that there is nothing unique about FLSA lawsuits that requires the terms of a settlement agreement to be available on the public docket, and thus have approved settlements after reviewing the agreement *in camera* or under seal. *See, e.g., Medley v. American Cancer Society*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (approving settlement of FLSA claims after terms of settlement were filed *in camera*); *Fredereksen v. ADM Milling Co.*, No. 06-cv-0113-GLS-DRH (N.D.N.Y. Nov. 6, 2007) (approving settlement without entering terms of settlement on record); *Tawamba v. Challenger Transport., Inc.*, No. 8:10-cv-02733-AW (D. Md. Sept. 28, 2011) (approving settlement of FLSA claims after conducting telephonic fairness hearing and without publicly disclosing terms of settlement); *Howell v. Dolgencorp, Inc.*, 2011 WL 121912, at *3 (N.D. W.Va. Jan. 13, 2011) (approving settlement and dismissing FLSA claims after conducting *in camera* review of settlement agreement); *Cruz v. H&R Block Eastern Enterprises, Inc.*, , No. 1:11-CV-21036 (S.D. Fla. Nov. 11, 2011) (approving FLSA settlement and dismissing claims after conducting *in camera* review of settlement agreement); *Malloy v. Pentec Health Inc.*, No. 09-5974 (E.D. Pa. July 16, 2010) (order approving settlement of FLSA claim as fair following *in camera* review); *Johnson v. WellPoint, Inc.*, 1:06-cv-02430-ODE (N.D. Ga. Sep. 2, 2009) (approving stipulation of settlement approval submitted under seal and dismissing claims with prejudice).

Here, confidentiality is important to Defendants because disclosure of the terms of the Agreement could disrupt its ongoing business operations. Moreover, the case is between private parties, not public entities, and as noted there are no absent class members whose rights might be affected by the Agreement. Thus, the general public has little if any genuine interest in the litigation and its resolution.

Consideration of the Agreement *in camera* would also be consistent with the strong presumption in favor of maintaining the confidentiality of settlement agreements. *See generally Schoeps v. Museum of Modern Art*, 603 F. Supp. 2d 673, 676 (S.D.N.Y. 2009) ("the Second Circuit strongly endorses the confidentiality of settlement agreements in virtually all cases"). Courts have approved the sealing of a settlement agreement when: (1) confidentiality is a material condition of the settlement; (2) public disclosure may harm defendants by encouraging other lawsuits; and (3) sealing will minimize the possibility of manipulation of the settlement process. *See Viada v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 84744 (S.D.N.Y. June 27, 2006) The court in *Viada* permitted a confidential FLSA settlement because confidentiality was an essential term of the agreement and – as here – the affected parties consented to sealing of the agreement.

### C. Conclusion

The parties therefore jointly respectfully request that this Court (i) approve the Agreement as fair and reasonable under the FLSA; (ii) review the Agreement *in camera* and not disclose its terms

THIS LETTERHEAD IS PRINTED ON RECYCLED STOCK



Honorable James L. Cott
July 24, 2013
Page 4

publicly; and (iii) dismiss the above-captioned action with prejudice and "so order" the Stipulation of Dismissal attached to the Agreement.[1]

On behalf of all parties, we thank the Court for its consideration of this request.

Respectfully submitted,

SEYFARTH SHAW LLP

/s/ *Robert S. Whitman*

Robert S. Whitman

Attachment

cc:   Michael Sweeney, Esq. (by email)
      Brian M. Moss, Esq. (by email)
      Howard Wexler, Esq. (by email)

---

[1] As set forth in paragraph 7(c) of the Agreement, in the event that Your Honor denies the Parties' joint request to review the settlement agreement in camera, the Parties nonetheless still wish to proceed with Court approval of the Agreement as a condition to dismissal of this action with prejudice.

15903922v.2

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "AGREEMENT") is made and entered into by and between SUSANA MARTINEZ, NINNETTE JUSTINIANO, JULIA FAZYLOVA, CAROL STANBERRY, and LORRAINE THOMAS (collectively "PLAINTIFFS"), on the one hand, and SUNSTONE HOTEL PROPERTIES, INC. ("SUNSTONE") and INTERSTATE HOTELS & RESORTS, INC. ("INTERSTATE") (SUNSTONE and INTERSTATE referred to collectively herein as "DEFENDANTS") (PLAINTIFFS and DEFENDANTS referred to collectively herein as the "Parties").

WHEREAS, PLAINTIFFS filed a Complaint in the United States District Court, Southern District of New York (the "Court"), entitled *Martinez et. al. v. Hilton Hotels Corporation et. al.*, No. 10 CV 7688 (RJH) (JLC), alleging various wage and hour violations in connection with their employment at the Hilton Times Square Hotel (the "Litigation"); and

WHEREAS, PLAINTIFFS filed an Amended Complaint in the Litigation on or about February 4, 2011; and

WHEREAS, DEFENDANTS deny any and all claims of wrongdoing asserted in the Amended Complaint; and

WHEREAS, former Defendant Hilton Hotels Corporation ("HILTON") was dismissed from the Litigation on or about January 5, 2012 pursuant to the Stipulation And Order of Dismissal With Prejudice signed by the Court; and

WHEREAS, on June 10, 2013, PLAINTIFFS Martinez and Thomas filed a complaint in the Court, entitled *Martinez v. Highgate Hotels, L.P.*, No. 13-CV-3948 (AKH), alleging various wage and hour violations in connection with their employment by a subsequent employer, Highgate Hotels, L.P. ("Highgate"), and Martinez and Thomas intend to continue that action against Highgate; and

WHEREAS, the Parties, in an effort to avoid the expenses, time demands and uncertainties of litigation, have reached an agreement to compromise and settle all disputes between them;

NOW, THEREFORE, for and in consideration of the mutual promises herein contained, and for good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged, the Parties agree as follows:

1) **Payment.** In exchange for the promises contained in this Agreement, DEFENDANTS shall provide PLAINTIFFS with a payment in the total gross amount of FOUR HUNDRED SIXTY FIVE THOUSAND DOLLARS AND NO CENTS ($465,000.00) (the "Settlement Payment"). Such amount shall be payable as follows:

(a) a check in the amount of $72,463, less applicable taxes and withholdings, made payable to "SUSANA MARTINEZ," for which an I.R.S. Form W2 shall be issued;

(b) a check in the amount of $35,563, less applicable taxes and withholdings, made payable to "NINNETTE JUSTINIANO," for which an I.R.S. Form W2 shall be issued;

15829039v.5

(c) a check in the amount of $43,213, less applicable taxes and withholdings, made payable to "JULIA FAZYLOVA," for which an I.R.S. Form W2 shall be issued;

(d) a check in the amount of $40,558, less applicable taxes and withholdings, made payable to "CAROL STANBERRY," for which an I.R.S. Form W2 shall be issued;

(e) a check in the amount of $33,203, less applicable taxes and withholdings, made payable to "LORRAINE THOMAS," for which an I.R.S. Form W2 shall be issued;

(f) a check in the amount of $173,000, made payable to "LYMAN & ASH," for which an I.R.S. Form 1099 shall be issued to each of the PLAINTIFFS based on their pro rata share of the settlement amount and to LYMAN & ASH; and

(g) a check in the amount of $67,000, made payable to "BRIAN M. MOSS, ESQ." for which an I.R.S. Form 1099 shall be issued to each of the PLAINTIFFS based on his pro rata share of the settlement amount and to BRIAN M. MOSS.

The Settlement Payment in the form of checks shall be delivered to Lyman & Ash within fifteen (15) business days of the Court's entry of an order approving this Agreement and dismissing the Litigation with prejudice. DEFENDANTS agree that the Settlement Payment, including the $240,000 in attorneys' fees and expenses set forth in items (f) and (g) above, is reasonable and agree not to object to the Court's approval of the Settlement Payment in its entirety.

2) **Tax Liability and Indemnification**. For all payments for which an IRS Form 1099 is issued, it will be each payee's responsibility to pay the appropriate federal, state and local income taxes, interest, and other amounts due on such payments and each payee will hold Defendants harmless for any claims by the IRS, or any other taxing authority, or government agency (whether foreign, federal, state or local), that may be made against Defendants arising out of or relating to any failure to pay any portion of these payments for income or social security tax purposes, or for any other purpose. Payees further agree to reimburse Defendants for any resulting payment(s) to the IRS, or any other taxing agency or other governmental authority, that Defendants must make with respect to such claim.

3) **Release of Claims**.

    a) In exchange for the Settlement Payment and the promises made herein, PLAINTIFFS, on behalf of themselves and all of their respective heirs, executors, administrators and assigns, hereby release DEFENDANTS, as well as all of their respective parents, subsidiaries, affiliates, successors-in-interest, predecessors-in-interest, officers, directors, supervisors, heirs, executors, employees, agents and representatives (collectively, "RELEASEES") from ANY AND ALL CLAIMS they may have or have had, known or unknown, related to their employment with DEFENDANTS from the beginning of time through the date this Agreement is approved by the Court. For the avoidance of doubt, the term RELEASEES as used in this Agreement does not include Highgate.

    b) This release includes, but is not limited to, any and all claims for breach of contract, promissory estoppel, assault, battery, intentional or negligent infliction of emotional distress, discrimination or harassment in employment on the basis of race, color, creed, religion, age, national origin, alienage or citizenship, disability, gender, sex,

- 2 -

15829039v.5

sexual orientation, marital status, veteran's status and any other protected grounds, personal injury, attorneys' fees and costs, wages, benefits, defamation, slander, wrongful discharge, and any and all claims based on any oral or written agreements or promises, and violation of any federal, state or municipal statute, ordinance, code, or regulation, including, but not limited to, claims arising under the Fair Labor Standards Act, Family and Medical Leave Act, the Worker Adjustment Retraining and Notification Act, the Employee Retirement Income Security Act of 1974, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the New York Labor Law, the New York State Human Rights Law, and the New York City Administrative Code.

4) **Approval of the Agreement and Dismissal of the Litigation.**

   a) The Parties agree that their lawyers shall sign the Stipulation of Dismissal attached as Exhibit A hereto and that within 7 days after this Agreement and Stipulation of Dismissal are fully executed, PLAINTIFFS, by their counsel, shall submit this Agreement to the Court through means other than a filing on the Court's public docket, along with the fully executed Stipulation of Dismissal and a cover letter which (a) states that the Parties jointly request that the Agreement be kept confidential and be reviewed solely *in camera* by the Court, (b) explains why the Agreement is fair, and (c) states that the Parties jointly request that the Court "so order" and file the Stipulation of Dismissal if it approves the Agreement.

   b) The Parties agree to cooperate fully with each other to obtain Court approval of this Agreement.

   c) The Parties agree that, in the event the Court does not approve the Agreement in substantially the form set forth herein or approve the dismissal of the Litigation with prejudice, DEFENDANTS shall have the right, in their sole discretion and upon written notice to LYMAN & ASH and BRIAN M. MOSS, to declare this Agreement void. If DEFENDANTS exercise their right to void this Agreement, the Amended Complaint may be restored to the Court's active docket. In such event, (i) neither this Agreement, nor any of the related negotiations or proceedings, shall be of any force or effect, and no Party shall be bound by any of its terms; (ii) all Parties shall stand in the same position, without prejudice, as if the Agreement had not been entered into or filed with the Court; (iii) nothing in this Agreement shall be admissible for any purpose; and (iv) DEFENDANTS shall have no obligation under the Agreement to make any payment to PLAINTIFFS, LYMAN & ASH, or BRIAN M. MOSS.

5) **No Admission of Liability.** Nothing in this Agreement shall be deemed or construed as an admission by any Party of fault or potential liability as to any other Party. This Agreement is entered into to resolve the Litigation and all other disputes between the Parties.

6) **No Claims Filed.** PLAINTIFFS represent to DEFENDANTS, as a material inducement to enter into this Agreement, that, other than the Litigation and Martinez v. Highgate, Docket No. 13-CV-3948, there are no pending matters, claims, charges, proceedings, complaints or actions relating to their employment at the Hilton Times Square Hotel filed or submitted by PLAINTIFFS or with their knowledge, or on their behalf, with any federal, state or municipal court, department, arbitration tribunal, or administrative or other agency. If any federal, state or municipal court, department, arbitration tribunal, or administrative or other agency assumes

- 3 -

15829039v.5

jurisdiction over any such matters, claims, charges, complaints or actions, PLAINTIFFS shall, if requested by counsel for DEFENDANTS, immediately cooperate (to the extent permitted by law) in such counsel's efforts to take all actions necessary to cause said entity to terminate such proceeding without liability to DEFENDANTS. PLAINTIFFS further represent that they have not assigned or transferred or attempted to assign or transfer to any person any claim that they have or may have against DEFENDANTS or other RELEASEES. PLAINTIFFS agree not to oppose any motion filed by RELEASEES under 28 U.S.C. § 1651(a) to enjoin them from initiating or prosecuting any action in any court based on any of the matters released pursuant to paragraph 3 above.

7) **Confidentiality.**

   a) Except as required by law, PLAINTIFFS shall not, directly or indirectly, disclose or authorize anyone to disclose the fact or terms of this Agreement or the negotiations leading to this Agreement, and shall not comment on or characterize the fact or terms of this Agreement, including the fact or amount of any payments made hereunder, except that they may disclose the nature and amount of such payments to their spouse, attorneys, tax consultants and/or financial advisors, whom PLAINTIFFS shall instruct to keep such information strictly confidential. If asked about the Litigation or their dispute with DEFENDANTS, PLAINTIFFS shall state that "the matter has been resolved" and nothing further. These restrictions shall be applicable to PLAINTIFFS even if this Agreement is filed on the Court's public docket and/or receives media coverage. Nothing in this Agreement is intended to prohibit PLAINTIFFS from providing truthful information about their employment or other relationship with DEFENDANTS in response to a formal request from a governmental entity of competent jurisdiction or pursuant to a duly issued subpoena or other formal process. In the event of any breach of this paragraph by PLAINTIFFS, DEFENDANTS shall have the right to recover damages arising therefrom.

   b) If the Court decides to enter or does enter this Agreement publicly on the Court Docket, then the Parties agree that such entry is permitted by this Agreement and will not oppose any such entry.

8) **Entire Agreement.** This Agreement represents the entire understanding among the Parties hereto, and fully supersedes any and all prior agreements or understandings among them, whether written or oral. PLAINTIFFS agree that DEFENDANTS have no further obligation of any kind to PLAINTIFFS except as explicitly contained in this Agreement.

9) **Changes To Agreement.** This Agreement may not be changed, amended, modified or terminated except by a written instrument signed by each of the parties to this Agreement.

10) **Severability.** In the event that any provision of this Agreement is held by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining provisions shall not be affected; and, the illegal or invalid provisions shall be reformed to the extent possible to be consistent with the other terms of this Agreement; and, if such provisions cannot be so reformed, they shall not be deemed to be a part of this Agreement. Notwithstanding the foregoing, if any of the PLAINTIFFS seeks and obtains a ruling from a court of competent jurisdiction that the release set forth in paragraph 3 of this Agreement is void, invalid or unenforceable, then DEFENDANTS, at their sole option and upon written notice to PLAINTIFFS, may declare this Agreement invalid and unenforceable as to such PLAINTIFF(S), and such PLAINTIFF(S) shall

15829039v.5

immediately return to DEFENDANTS the pro rata portion of the payment set forth in sections 1(f) and 1(g) attributable to her/them.

11) **Applicable Law.** Except to the extent superseded by federal law, this Agreement shall in all respects be interpreted, enforced and governed under the laws of the State of New York.

12) **Waiver.** By signing this Agreement, PLAINTIFFS acknowledge and agree that:

   a) they have been given a reasonable and sufficient period to review and consider the terms of this Agreement and to negotiate the terms thereof;

   b) they have carefully read and understand the terms of the Agreement and have been advised that they are waiving legal claims;

   c) they have consulted with LYMAN & ASH and/or BRIAN M. MOSS, who assisted and advised them throughout the Litigation and in the negotiation and review of this Agreement;

   d) they are entering into the Agreement knowingly and voluntarily, without duress or coercion and with full knowledge of its significance and consequences of the rights relinquished, surrendered, released and discharged hereunder; and

   e) the only consideration for signing this Agreement are the terms stated herein and no other promise, agreement or representation of any kind has been made to them by any person or entity whatsoever to cause them to sign this Agreement.

13) **Counterparts.** This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. A facsimile, digital image, or copy of this Agreement shall have the full force and effect of, and be admissible as, an original.

ACCEPTED AND AGREED:

[SIGNATURES ON NEXT PAGE]

- 5 -

15829039v.5

- 6 -

15829039v.5

[signature]

---
SUSANA MARTINEZ

JUL 16.17
Date

---
NINNETTE JUSTINIANO

Date

---
JULIA FAZYLOVA

Date

---
CAROL STANBERRY

Date

---
LORRAINE THOMAS

Date

SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By: _____
 Catherine Nguyen
 Corporate Counsel

Date

- 7 -

15829039v.5

| | |
|---|---|
| SUSANA MARTINEZ | Date |
| *[signature]* <br> NINNETTE JUSTINIANO | 7-16-13 <br> Date |
| JULIA FAZYLOVA | Date |
| CAROL STANBERRY | Date |
| LORRAINE THOMAS | Date |

SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By:_____
    Catherine Nguyen
    Corporate Counsel

Date

| | |
|---|---|
| SUSANA MARTINEZ | Date |
| NINNETTE JUSTINIANO | Date |
| *[signature]* <br> JULIA FAZYLOVA | 7/17/2013 <br> Date |
| CAROL STANBERRY | Date |
| LORRAINE THOMAS | Date |

SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By:_____         _____
      Catherine Nguyen                                                        Date
      Corporate Counsel

---

SUSANA MARTINEZ                                   Date

---

NINNETTE JUSTINIANO                               Date

---

JULIA FAZYLOVA                                    Date

*[signature: Carol Stanberry]*                    7/17/13
CAROL STANBERRY                                   Date

---

LORRAINE THOMAS                                   Date

SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By:_____                _____
        Catherine Nguyen                          Date
        Corporate Counsel

- 7 -

_____  _____
SUSANA MARTINEZ                Date


_____  _____
NINNETTE JUSTINIANO            Date


_____  _____
JULIA FAZYLOVA                 Date


_____  _____
CAROL STANBERRY                Date

*[signature: Lorraine Thomas]*    7/17/2013
_____  _____
LORRAINE THOMAS                Date


SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By:_____  _____
    Catherine Nguyen              Date
    Corporate Counsel

- 7 -

_____          _____
SUSANA MARTINEZ                          Date

_____          _____
NINNETTE JUSTINIANO                      Date

_____          _____
JULIA FAZYLOVA                           Date

_____          _____
CAROL STANBERRY                          Date

_____          _____
LORRAINE THOMAS                          Date

SUNSTONE HOTEL PROPERTIES, INC.
and INTERSTATE HOTELS & RESORTS, INC.

By: *[signature]* Catherine Nguyen          7/16/13
Catherine Nguyen                          Date
Corporate Counsel